CHERYL L. PIEHL, Adm'r of the Estate of Mabel Finn, Deceased, Petitioner-Appellant, v. THE NORWEGIAN OLD PEOPLES' HOME SOCIETY OF CHICAGO, Respondent-Appellee.

First District (3rd Division)   No. 83—2309

Opinion filed September 28, 1984.

594

Berks, Berks & Marcus, Ltd., of Des Plaines (Stuart Berks, of counsel), for appellant.

John H. Hanson, of Park Ridge, for appellee.

JUSTICE WHITE delivered the opinion of the court:

Plaintiff, Cheryl L. Piehl, administrator of the estate of Mabel Finn, filed a petition for citation to discover and recover assets pursuant to section 16—1 of the Probate Act of 1975 (Ill. Rev. Stat. 1983, ch. 110½, par. 16—1) praying that defendant, Norwegian Old Peoples' Home Society (the Home) be directed to account for and return all assets transferred by the deceased to the Home in connection with her residency in facilities owned by the Home. The petition for citation alleged that: (1) on October 26, 1981, Mabel Finn signed a document entitled, "Continuing Care Contract" which purported to provide for her lifetime care by Norwood Park Home, a nursing facility owned and operated by the Norwegian Old Peoples' Home Society, in exchange for the transfer of all her assets to the Home; (2) approximately 5½ months later, on April 8, 1982, Mrs. Finn died while a resident of the Norwood Park home; and (3) the Home paid $3,000 for Mrs. Finn's funeral expenses but refused to make any further accounting as to assets, funds or property transferred by Mrs. Finn to the Home.

On June 9, 1983, the circuit court of Cook County, Probate Division, issued the citation to discover assets against the Home. Thereafter, the Home filed a motion to dismiss the citation. Said motion was granted and plaintiff's petition was dismissed.

■■■ On appeal, plaintiff contends that the "continuing care contract" signed by Mrs. Finn was void for lack of mutuality. Plaintiff argues that the Home's promise to care for Mrs. Finn was illusory, since the Home had the option to terminate the contract if Mrs. Finn was ineligible for old age assistance benefits. Plaintiff concludes that the Home was not bound by the contract and therefore neither was Mrs. Finn. A contract does not lack mutuality merely because its obligations appear unequal or because every obligation or right is not met by an equivalent counterobligation or right in the other party. (*Cox v. Grant* (1978), 57 Ill. App. 3d 922, 926, 373 N.E.2d 820.) The mutuality requirement is satisfied if each party has made a promise to the other and is therefore an obligor and under a duty to the other contracting party. (57 Ill. App. 3d 922, 925.) In the instant case, the decedent and the Home each assumed obligations which were detrimental to them and could be enforced by the other party. The decedent transferred to the Home her present assets and any and all assets which she might subsequently acquire together with her social security income, her pension benefits, and all other monies or benefits for which she might be eligible. In return the Home agreed to provide room, board and nursing and medical services until the decedent left the facility voluntarily,[1] involuntarily,[2] or by reason of death. We are aware that section 2.3 of the "continuing care contract" provided that the obligation of the facility to continue care may be terminated at the option of the facility when all of the assets transferred have been used for resident's care if the resident fails to qualify for old age assistance benefits. This provision, however, did not give the Home an absolute right to terminate or cancel the contract at any time. The Home was bound to care for Mrs. Finn until the assets transferred were exhausted or, if Mrs. Finn qualified for old age assistance benefits, until her death. Moreover, it is well settled that want of mutuality is no defense where a contract is executed or where a party who was not bound to perform does perform. (*Heller & Co. v. Convalescent Home* (1977), 49 Ill. App. 3d 213, 220, 365 N.E.2d 1285; *Sisters of the Third Order of St. Francis v. Estate of Guillaume* (1921), 222 Ill. App. 543.) In the instant case, the Home provided care for Mrs. Finn until her death. Accordingly, we conclude that the "continuing care contract" had been performed by the Home and that the claim of lack of mutuality was not available.

---

[1]The resident could terminate his or her stay at the facility at any time, in which case he or she would be entitled to a refund.

[2]The Home reserved the right to discharge residents for medical or safety reasons. The resident was entitled to a refund if he or she left voluntarily or at the request of the Home.

■ Plaintiff maintains that the "continuing care contract" was oppressive and unconscionable in that, although it purports to provide care for Mrs. Finn's lifetime, the contract allowed the Home to terminate such care upon exhaustion of the transferred assets or for medical or safety reasons. An unconscionable contract has been defined as a one-sided contract or one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept on the other. (*First Financial Insurance Co. v. Purolator Security, Inc.* (1979), 69 Ill. App. 3d 413, 419, 388 N.E.2d 17; *Personal Finance Co. v. Meredith* (1976), 39 Ill. App. 3d 695, 702-03, 350 N.E.2d 781.) The term unconscionability encompasses an absence of a meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. (*First Financial Insurance Co. v. Purolator Security, Inc.* (1979), 69 Ill. App. 3d 413, 419.) Where a contract is found to be unconscionable, courts will refuse to give full effect to it as written. (*Neal v. Lacob* (1975), 31 Ill. App. 3d 137, 142, 334 N.E.2d 435; *Personal Finance Co. v. Meredith* (1976), 39 Ill. App. 3d 695, 702.) We are of the opinion that the terms of the "continuing care contract" were not unreasonably favorable to the Home. The contract provided that the Home would care for decedent until she left the facility voluntarily, involuntarily, or by reason of death. In the event Mrs. Finn left the facility voluntarily she was entitled to recover the balance then remaining in the account paid or deposited with the facility on her behalf less charges properly allocated to her stay in the facility. Mrs. Finn was also entitled to a refund should the Home request that she leave the facility for medical reasons, safety reasons or for other reasons permitted by law. Lastly, the Home reserved the right to terminate the contract should Mrs. Finn not be eligible for old age assistance benefits. However, the Home incorporated certain safeguards in the contract to insure Mrs. Finn's eligibility for old age assistance benefits. Most importantly, the Home's option could only be exercised once all assets transferred to the Home had been used in the care of Mrs. Finn. Accordingly, we conclude that the "continuing care contract" signed by Mrs. Finn was not unconscionable.

For the aforementioned reasons, the judgment of the circuit court is affirmed.

Affirmed.

RIZZI, P.J., and McNAMARA, J., concur.